CASSA MARITTIMA, RESPONDENT, v. PHENIX INSURANCE COMPANY, APPELLANT.

*Marine insurance — loan upon vessel and freight — insurable interest — election of remedies.*

A foreign corporation made a loan to the master of a foreign vessel upon it and its freight, and thereupon received a written stipulation in connection with such loan, which provided that neither the master nor the owner of the vessel should procure any further advances upon the same freight at the port of loading, and that, in that event, they should become personally liable for the loan, even though the vessel were lost. Without the knowledge or consent of said corporation the master procured a further loan, soon after which the vessel was disabled and became unable to complete its voyage.

In an action upon a policy of insurance issued to secure the corporation which made the loan, it was claimed by the insurance company that the insured, by the act of the master in making the further loan, had lost its interest in the freight and had, consequently, no insurable interest to be protected by the policy.

*Held,* that such act of the master did not vitiate the insurable interest of the corporation, and that the latter, at its election, might proceed upon the policy, or against the master and owner by virtue of the terms of the written stipulation.

Appeal by the Phenix Insurance Company from a judgment, entered in the office of the clerk of the city and county of New York on the 7th day of August, 1890, upon a decision of the court directing a judgment for the plaintiff, with costs, after a trial at the New York Circuit, before the court, without a jury.

*Edward P. Lyon,* for the appellant.

*Edward K. Jones,* for the respondent.

Daniels, J.:

The recovery herein is for the amount of a loan made by the plaintiff, a corporation existing and doing business in the city of Naples, in the kingdom of Italy, to the master of the vessel, Buoni Amici, for the payment of which her freight was hypothecated, as well as the vessel herself. The loan was made at Pensacola, in Florida, where the vessel was then lying, that being a foreign port and she being an Italian craft. When the loan was made the agent of the plaintiff took from her master the following instrument:

£400.                   Pensacola, Fla., *August* 31, 1886.

Fifteen days after arrival at the port of destination, River Plata, or other intermediate port at which shall end the voyage of my vessel, denominated Buoni Amici, I promise to pay to the order of the Cassa Marittima, of Naples, the sum of four hundred pounds sterling, value received, in cash as a loan on freight for the last expenses necessary to the undertaking of the voyage from Pensacola to River Plata, and I hereby assign therefor, to the said Cassa Marittima, enough of the present freight to cover the sum of the above loan, with power to collect when due, and I hereby hypothecate ship and freight for repayment of said loan, with priority over every other credit, and in case of total loss the amount received as loan shall not be paid back, and I accept all the conditions set down in the regulations of the Cassa Marittima relating to loans on freight, of which I received a copy.

                                   B. QUARTINO.

Among the stipulations or regulations accompanying and made a part of it, that numbered fifteen is the only one important to be specially considered in the determination of this appeal. By that

regulation it was declared that : " The owner or captain shall not take any other advances upon the same freight at the port of loading, or, in such case, hold themselves bound to return the present loan, even though the vessel be lost." The master did, in fact, violate this regulation by obtaining a further loan before the commencement of the voyage upon a similar hypothecation, amounting to the sum of $1,100. But that loan was made without the knowledge, privity or consent of the plaintiff.

After these loans had been made the defendant made and delivered to F. Dassori, for account of whom it might concern, its policy of insurance " on advances against Captain's draft upon the freight of all kinds of lawful goods and merchandise laden, or to be laden on board the good bark Buoni Amici." The vessel subsequently proceeded upon her voyage, but, before reaching its termination, she was so much damaged by perils of the sea as to render it necessary to make the nearest port, and she was taken to Port Eads, in the State of Louisiana, where, by a survey, it was found that she had been so badly damaged as to be unfit to continue her voyage. It was thereupon ended, the cargo discharged and the vessel sold. Notice thereof and proof of loss was served upon the defendant, which refused to pay on account of the violation of this fifteenth regulation by the making of the second loan while the vessel laid at Pensacola, and before the commencement of her voyage.

It is, without doubt, essential to the right of the plaintiff to recover on the policy, that it should be authorized to resort to the freight for the reimbursement of the loan, and that this authority should continue unimpaired. For without that there would be no insurable interest in the plaintiff. And that right depended upon the fact that payment could alone be secured by the earning of the freight through the delivery of the cargo at its port of destination. But as the making of the second loan was without the plaintiff's knowledge or consent, this right or interest was not defeated by it. The lien or right was created by the loan, and the instrument subscribed by the master. It thereby became vested in the plaintiff, and the master was incapable of divesting it by any act or wrong on his part short of satisfaction of the debt. The fifteenth regulation did not of itself defeat the interest or lien of the plaintiffs in the event of a subsequent loan. It did no more than to entitle the

lender to proceed against the owner and master for the recovery of the loan in case it elected so to do. It was in no sense made obligatory that it should abandon its lien upon or interest in the freight if a violation of this regulation should take place by the act alone of the master. The most that was done was to provide another remedy, which the plaintiff was at liberty to follow or not as it elected. It did not elect to accept that remedy, and in its effort to secure it for the defendants' benefit by a suit in Italy against the owners it was, in fact, defeated. But to indemnify itself the plaintiff has asserted and relied upon the continuance of an insurable interest in itself arising out of the terms upon which the loan was made. And that it was entitled to do, for this right could only be avoided by its own consent, or surrender, or a release, or satisfaction having the same effect. (*McKnight* v. *Dunlop*, 1 Seld., 537, 544.) The wrong of the master, unsanctioned and unapproved by the plaintiff, it is clear on principle, as well as authority, could not be attended with that result. (*Conard* v. *Atlantic Ins. Co.*, 1 Pet., 386, 437; *The Ship Virgin*, 8 id., 538, 553.)

In the cases of *Stainbank* v. *Fenning* (11 C. B., 51) and *Stainbank* v. *Shepard* (13 id., 418), no maritime lien or interest whatever was at any time created, and no hypothecation of the ship or freight took place. And for that reason they maintain no principle which would turn the plaintiff over to the master and owner personally for indemnity, while in this instance that lien or interest was regularly and legally secured. (*The Brig Draco*, 2 Sumner, 157.) And it was not, and could not be, displaced or contravened by the wrong of the master, who in no manner represented or acted for the plaintiff. If it be admitted that it gave the plaintiff another ground of action, it was not bound to resort to it, but it could insist still upon the security, which in good faith had been created and provided for it. (*The Brig Hunter*, 1 Ware's R., 251.)

There was no concealment or misrepresentation on the part of the plaintiff or its agent, affecting its right to resort to the policy for indemnity after the loss of the vessel, neither was there any breach of warranty established. That is not claimed to have arisen, unless it was created by the final and second loan. But no assurance was given that it should not be made, neither did the policy contain anything prohibiting it, as long as it was without the knowledge or

assent of the plaintiff. The most that was done by the fifteenth regulation was, that, if such a loan were made, the plaintiff might then resort to the master and owner personally to recover its money. It was a privilege secured to it, not a remedy which it was obliged to adopt. No warranty whatever to this effect appears by the policy. And that fact seems fatal to its existence. For it has been held that a warranty whose breach produces a loss of the insurance should appear on the face of the policy. It must be evident in terms or from necessary construction. (*Jefferson Ins. Co. v. Cotheal,* 7 Wend., 73, 80.) And neither has here been established. (*Owens v. Holland Purchase Ins. Co.,* 56 N. Y., 565, 572, 573 ; *Vilas v. N. Y. Central Ins. Co.,* 72 id., 590.)

Upon no other ground was any defense presented to the plaintiff's action. But its right to recover was legally maintained and the judgment should be affirmed, with costs.

Van Brunt, P. J., and Brady, J., concurred.

Judgment affirmed, with costs.